Marvin K. HAMMON, et al., Plaintiffs,

v.

Marion S. BARRY, Jr., et al., Defendants.

Kevin Michael BYRNE, et al., Plaintiffs,

v.

Theodore R. COLEMAN, et al., Defendants.

Civ. A. Nos. 84–0903 (CRR), 85–0782 (CRR).

United States District Court, District of Columbia.

Nov. 6, 1990.

As Amended Nov. 13, 1990.

---

Joan A. Burt and Dovey J. Roundtree, Washington, D.C., for Hammon plaintiffs.

George H. Cohen, Robert M. Weinberg, and Jeremiah A. Collins of Bredhoff & Kaiser, Washington, D.C., for Byrne plaintiffs and Local 36.

Dr. Herbert O. Reid, Sr., District of Columbia Corp. Counsel, Martin L. Grossman, Deputy Corp. Counsel, George C. Valentine, Asst. Corp. Counsel, Claude Bailey, Sp. Counsel for Corp. Counsel, and Theresa Jenkins, Counsel for D.C. Fire Dept., for defendants.

Joel P. Bennett, Washington, D.C., for Joseph L. Smith and certain retired firefighter members of Hammon class.

Margie A.S. Lehrman, Washington, D.C., for widow of Ronald Washington, deceased firefighter.

Janet Cooper, Washington, D.C., for Donald F. Drury, member of Byrne class.

Stephen A. Saltzburg, Washington, D.C., Sp. Master.

CHARLES R. RICHEY, District Judge.

On August 20, 1990 the three parties to the above-captioned class action lawsuit—the class of black firefighters ("Hammon plaintiffs" or "Hammon class"), the class of white firefighters ("Byrne plaintiffs" or "Byrne class"), and the District of Columbia defendant ("the City")—executed a Settlement Agreement through duly authorized counsel. *See* Agreement, Appendix I. The two-part Settlement Agreement clearly states that it is binding on all parties, that it resolves all claims raised in this litigation, and that it sets forth all essential terms of the settlement. Moreover, the Settlement Agreement contemplated that the parties would work with Special Master Stephen Saltzburg to provide the Court with a detailed decree to implement the terms of the Settlement Agreement. Pursuant to Fed.R.Civ.P. 23(e), the Court must now decide whether to approve the Settlement Agreement as a fair, adequate, and reasonable resolution of the parties' claims. Having carefully considered all of the pleadings submitted by the parties, the Special Master's Reports, all of the objections submitted in writing or made orally at the October 23, 1990 Fairness Hearing, the entire record herein, and the underlying law, the Court will approve the parties' August 20, 1990 Settlement Agreement. Furthermore, the Court will conditionally enter its own decree, which adopts—with some modifications—the consent decree proposed by the Special Master, the Byrne plaintiffs and the City but which shall only go into effect only after the parties have had one final opportunity to submit a consent decree signed by all three parties to this litigation.

## I. Factual Background

The parties' acrimonious dispute, involving charges of discrimination and reverse discrimination, has been burning for over six years. The direct result of this dispute is that the District of Columbia Fire Department administered its last promotional examination (usually given every two years) in 1984 and has made no permanent promotions since 1984.

The Hammon plaintiffs' part of this has been pending before the Court since March 1984, and the Byrne plaintiffs' part of this lawsuit has been pending since March 1985. In ruling on an affirmative action plan that the City had adopted in response to recommendations by a hearing examiner at the administrative level, the Court approved the affirmative action plan in part, holding "that the hiring aspects of the plan satisfy the minimal requirements of Title VII and the Constitution, but that the promotion aspects cannot survive Title VII scrutiny." *Hammon v. Barry*, 606 F.Supp. 1082, 1084 (D.D.C.1985). However, addressing only the hiring part of the affirmative action plan on appeal, a panel majority reversed and struck down the plan's hiring aspects. *Hammon v. Barry*, 813 F.2d 412 (D.C.Cir.), *reh'g denied*, 826 F.2d 73 (D.C.Cir.), *granting reh'g en banc*, 833 F.2d 367 (D.C.Cir. 1987) (en banc) (per curiam), *vacating order* granting *reh'g en banc* 841 F.2d 426 (D.C.Cir.) (en banc) (per curiam) (6–5 decision), *cert. denied*, 486 U.S. 1036, 108 S.Ct. 2023, 100 L.Ed.2d 610 (1988).

Since the Court of Appeals' decision and remand, the parties have tried, with this Court's assistance, to settle this case with-

out proceeding to trial. To facilitate these settlement negotiations and assist the parties in reaching an agreement, the Court, pursuant to Fed.R.Civ.P. 53, appointed Stephen Saltzburg as Special Master in April 1990, and each of the parties agreed to pay one-third of his fees and expenses. The considerable efforts of the parties and the Special Master culminated in a draft of a proposed Settlement Agreement. Then, the Court met with counsel for all the parties to tell them that it was their decision whether to sign the proposed Settlement Agreement and that the Court had neither read the proposal nor decided whether to approve it in the event the parties did sign it.

The Hammon plaintiffs were informed of the proposed Settlement Agreement, and, after considering it for some time, the Hammon plaintiffs, by class counsel Joan Burt, signed the Settlement Agreement. At a subsequent status conference with the Court, Dovey J. Roundtree (who entered her appearance during February 1989 as co-counsel for the Hammon plaintiffs) independently registered her approval of the Settlement Agreement. Having been notified of and having considered the Special Master's proposal, the Byrne plaintiffs, by class counsel George Cohen, also signed the Settlement Agreement, which was subsequently voted upon and ratified by Local 36. Finally, the City took the proposal under advisement, and, by Corporation Counsel Dr. Herbert O. Reid, Sr., the City also signed the Settlement Agreement.

Thus, on August 20, 1990, the parties all executed a Settlement Agreement that is final and binding on all the parties and that resolves *any and all claims of discrimination*—whether based upon the Constitution or federal or local statutes—raised by the classes and the individual members at any point during this lawsuit. Although the Settlement Agreement is one integrated document, it contains two parts to reflect the different claims of the Hammon and Byrne plaintiffs: Part A (signed by the Hammon plaintiffs and the City) addresses all of the lawsuit's claims involving hiring and vestiges of discrimination but not the dispute over future promotions and Part B (signed by the Hammon plaintiffs, the Byrne plaintiffs, and the City) addresses the future promotions issue. The Settlement Agreement explicitly states that it "sets forth *all essential terms* of the settlement;" Agreement, Appendix I, Part A ¶ 1, Part B ¶ 1 (emphasis added), and that "Parts A and B together resolve *all* claims and bind *all* class members with respect to *all* claims of discrimination as of the date of this agreement," *id.* Part A ¶ 21 (emphasis added); *see id.* Part B ¶ 2.

Without going into an overly detailed description of the Settlement Agreement, which speaks for itself, the Court notes that it provides for various forms of relief. The Hammon plaintiffs will receive a $3.5 million lump-sum payment from the City, which does not include attorneys fees and which will be divided among the class members based upon how many years each firefighter worked as well as other criteria. *See id.* Part A ¶¶ 4, 8–17. Moreover, the Settlement Agreement provides for: about 180 immediate promotions (based upon an attached schedule) to fill most outstanding vacancies; the creation of a new (fourth) platoon of firefighters with many new Sergeant, Lieutenant, and Captain positions; the development and administration of fair promotional examinations to fill some outstanding and all future vacancies. *See id.* Part B ¶¶ 5–13. In return for the foregoing, the City avoids any finding of liability and enhances the public safety by improving Fire Department working conditions and morale and making long overdue promotions. Finally, all parties avoid the risks and costs of proceeding to trial.

In short, while each of the parties benefits from the Settlement Agreement, none of the parties has obtained a perfect result for itself. As is common when a case settles rather than proceeding to trial, the Settlement Agreement contains various trade-offs and concessions that the parties agreed to when faced with the prospects of litigating and perhaps losing some or all aspects of this case.

There is nothing on the record before the Court to indicate that any party attempted to modify or change the Settlement Agree-

ment between the date of its signing on August 20, 1990 until the Fairness Hearing on October 23, 1990. Moreover, at the Fairness Hearing itself, counsel for all the parties reaffirmed the Settlement Agreement. Only after the Fairness Hearing and after the City and the Byrne plaintiffs had already signed the Proposed Consent Decree did it become clear that Joan Burt, counsel for the Hammon plaintiffs, was refusing to sign the Proposed Consent Decree—although she had several times stated on the record that she would, *see* October 16, 1990 Meeting with Special Master Tr. at 6, 12, 13—and was even attempting to renege on the essential terms of the Settlement Agreement.

The Settlement Agreement envisioned that the parties would work with the Special Master to develop a decree for the Court's approval, *see* Agreement, Appendix I, Part A ¶ 1, but the Settlement Agreement nowhere indicates that it could be implemented only by a *consent* decree signed by all the parties. In fact, the Special Master has stated to the Court that he purposely did not use the term "consent decree" when drafting the Settlement Agreement, in light of the many previous instances throughout this litigation in which the parties were unable to cooperate. Thus, the record is clear that the parties originally agreed that the Court could enter its own decree in accordance with the essential terms contained in the Settlement Agreement in the event that the parties failed to agree upon one consent decree.

Since the date the Settlement Agreement was signed by all of the parties, the parties have worked with the Special Master and the Test Development Committee ("TDC") to develop promotional examinations as required by the Settlement Agreement.[1] The first promotional test is scheduled for December 1990, and it will provide hundreds of firefighters, who have been studying for weeks, with their first opportunity for a promotion.

The parties and the Special Master notified the class members of the October 23, 1990 Fairness Hearing in various ways. All current Fire Department members received personal notice, and retired firefighters and others who requested notice received personal notice. In addition, class members received publication notice in five different publications. *See* Notices, Appendix III. Judging by the written objections the Court received pursuant to this notice procedure and the responses at the Fairness Hearing, the Court is satisfied that the various notices succeeded in alerting the class members to the proceedings.

In anticipation of the Fairness Hearing, the Special Master met with counsel for all the parties on October 16 and 17, 1990 to discuss the class members' written objections and formulate responses. The record is clear that all counsel present agreed with and supported the Special Masters' proposed responses to the class members' objections, *see* October 17, 1990 Meeting with Special Master Tr. at 21–55. Before the Fairness Hearing, no counsel for any of the parties requested the Special Master to suggest to the Court that any of the class members' objections had any merit, except for one minor modification (agreed to by all the parties) enabling the heirs or estates of deceased firefighters, who otherwise would have been eligible to share in the settlement fund to submit claims. Nor did counsel for any of the parties argue at the Fairness Hearing that any of the class members' objections should prevent Court approval of the Settlement Agreement.

## II. Analysis

A. Jurisdiction Despite Notice of Appeal

■ A threshold issue is whether this Court continues to have jurisdiction to proceed in this matter in light of the Hammon plaintiffs' Notice of Appeal from the Court's September 12, 1990 Order extending the period of the Special Master's reference and responsibility. The Hammon

---

1. The TDC was established earlier in this litigation by agreement of all the parties and has been funded by the City.

plaintiffs have not filed a motion for a stay pending appeal with this Court nor have they ever indicated on the record, orally or in writing, that this Court should hold these proceedings in abeyance until their appeal is resolved. Moreover, as far as the Court is aware, the Hammon plaintiffs have filed only a Notice of Appeal with the Court and, to the Court's knowledge, have done nothing further about pressing their appeal at this time. That is not surprising since the use of special masters has been approved "in a wide variety of remedial contexts ... includ[ing] cases ... remedying various ... statutory or constitutional violations." *Halderman v. Pennhurst State School & Hosp.*, 612 F.2d 84, 111 (3d Cir.1979) (en banc), *rev'd on other grounds*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

In any event, the Notice of Appeal does not divest this Court of jurisdiction because the order from which the Hammon plaintiffs seek to appeal is an interlocutory, non-appealable order. *See* 9 Wright & Miller, *Federal Practice and Procedure* § 2615, at 813 ("An order of reference to a master is interlocutory and not appealable."). Instead of allowing the Hammon plaintiffs to willy-nilly deprive this Court of jurisdiction, "thus bringing [these] proceedings to a standstill while a non-appealable ruling wends its way through the appellate process," *Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir.1985), the Court will "disregard the notice of appeal [from a non-appealable order] and proceed with the case," *Hammerman v. Peacock*, 623 F.Supp. 719, 721 (D.D.C.1985) (citing 9 *Moore's Federal Practice* ¶ 203.11, at 3–52 (citing cases)); *see also SEC v. American Bd. of Trade, Inc.*, 829 F.2d 341, 344 (2d Cir.1987), *cert. denied*, 486 U.S. 1034, 108 S.Ct. 2018, 100 L.Ed.2d 605 (1988); *United States v. Bas-*

*tanipour*, 697 F.2d 170, 173 (7th Cir.1982), *cert. denied*, 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d 358 (1983).

**B. Number of Objecting Class Members**

■ Turning to the merits of whether the Court should approve the Settlement Agreement as a fair resolution of this case, the Court first examines the number of the objections received. Although approximately 85 individuals objected to some aspect of the Settlement Agreement,[2] that is a relatively low level of dissatisfaction considering that the Hammon and Byrne classes comprise at least 2,000 individuals.[3] Moreover, the number of objectors is somewhat misleading because that figure includes about 33 members of the Fire Prevention unit who made essentially the same objection based on the absence of a separate test and insufficient pay and whose concerns are discussed in more detail below. *See infra* Section G. Thus, as best as the Court can determine, it appears that less than five percent (85 out of 2,000) of the class members objected, and that figure drops to less than three percent (52 out of 2,000) if the Fire Prevention common objection is put to one side. *Compare Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir.1977) (affirming district court's approval of class action settlement over objection of counsel purporting to represent almost half of the class); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803 (3d Cir.) (affirming district court's approval of class action settlement over objections by over twenty percent of class), *cert. denied*, 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974).

While the fact that a relatively small percentage of the class members objects to a proposed settlement is not dispositive,

---

**2.** The Court received about 108 written submissions but about 22 of those submissions were requests for claims forms.

**3.** According to data gathered by the Special Master with the help of the parties, there are currently about 1,300 firefighters represented by Local 36 who would be affected by the Settlement Agreement as members of either the Hammon or the Byrne classes. In addition, approximately 974 persons took the 1980 hiring exami-

nation, and about 724 of those applicants were black and are included in the Hammon class. However, there is some overlap because a (presently undetermined) number of those 724 black applicants have since been hired and are currently with the Fire Department. Finally, in addition to the foregoing figures, about 189 retired black firefighters are also part of the Hammon class.

"[c]ourts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections." 2 H. Newberg, *Newberg on Class Actions* § 11.47, at 463 (2d ed. 1985) (citing *Laskey v. International Union (UAW)*, 638 F.2d 954 (6th Cir.1981)). The low percentage of objectors in this case is one factor in the Court's conclusion that the Settlement Agreement is fair and that almost all of the class members are looking forward to its approval so that the promotions can be made, the promotional tests given, and the settlement fund disbursed.

### C. Adequacy of Monetary Aspect of Settlement

Next, the Court considers the adequacy of the $3.5 million lump-sum payment that the City would make to the Hammon plaintiffs under the Settlement Agreement. As far as the Court can tell there has been only one objection—a general objection at that—to the amount of the monetary relief. In view of the factual and legal uncertainties that the Hammon plaintiffs face if they were to proceed to trial,[4] as well as the substantial harm they would continue to suffer by being precluded from receiving immediate promotions and taking promotional exams, the Court holds that the $3.5 million settlement amount is well within the range of a reasonable and adequate settlement. *Id.* § 11.44, at 457 (citing *Newman v. Stein*, 464 F.2d 689 (2d Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34

L.Ed.2d 488 (1972)). Another factor in the Court's analysis is that the Special Master argues in support of the reasonableness of the $3.5 million figure. Most important, however, is that counsel—who represent three very different parties, who have been deeply involved in this case from the beginning and can evaluate their cases better than anyone else, and who have failed to agree for so long—all agreed after extensive arms-length negotiations that $3.5 million was a fair settlement. *See id.* § 11.46, at 462 (" 'The court should give great weight to the fact that the lawyers for substantially all of the plaintiffs and defendant who have been engaged in this arduous litigation for seven years unanimously support the settlement.' " (quoting *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y.1972))).

It is well established that a court deciding whether to approve a class action settlement should not substitute its judgment for that of the proponents of the settlement, *id.* § 11.44, at 457 (citing *Steinberg v. Carey*, 470 F.Supp. 471 (S.D.N.Y. 1979)), and that "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results," *id.* § 11.49, at 466. Consequently, the Court sees no reason on this record to reject or modify the $3.5 million figure negotiated by the parties.[5] Any argument that the Hammon plaintiffs would recover much more than $3.5 million if they proceeded to

---

**4.** Although the record does contain some evidence of discrimination, the Hammon plaintiffs' chances of prevailing in any significant way if this case were to go to trial are by no means overwhelming. In addition to contending with the City's statute of limitations defense, which as discussed below is potentially devastating to the older discrimination claims from that period when discrimination was most obvious, *see infra* Section D, the Hammon plaintiffs must keep in mind that, at the administrative level, "the Hearing Examiner rejected the lion's share of the [Holmes]–Sheffield [intentional discrimination and adverse impact] allegations." *Hammon*, 813 F.2d at 415; *see also id.* at 415 n. 5.

**5.** The Court pauses to note briefly that it is axiomatic that the Hammon plaintiffs are

bound by the provisions of the Settlement Agreement which specify that they will receive $3.5 million from the City. Therefore, the Court summarily rejects Joan Burt's frivolous post-Fairness Hearing request that the Court unilaterally "modify" the Settlement Agreement and order the City to pay an additional $1 million into the settlement fund. *See* October 31, 1990 Hammon Plaintiffs' Post–Fairness Hearing Report to the Court at 8. A settlement agreement is a contract that may not be unilaterally rescinded, *see American Sec. Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060 (D.C.Cir. 1986), and "when [one party] attempt[s] to withdraw from the agreement, [the other party can] enforce[ ] it by requesting the district court to enter the appropriate order," *Village of Kaktovik v. Watt*, 689 F.2d 222, 230 (D.C.Cir.1982).

trial not only is pure speculation,[6] but also fails to take into account that this $3.5 million would go immediately and directly to the class (without attorneys' fees or any further costs being subtracted) whereas another amount disbursed pursuant to a judgment, if any, after trial would probably reach the class members only after several years of trial and appellate litigation.

## D. Apportionment of Settlement Fund

A large percentage of the objections represent challenges to the way in which the $3.5 million settlement fund would be apportioned among Hammon class members. Under the Settlement Agreement and Proposed Consent Decree, that $3.5 million would be apportioned as follows: (1) at least $2.4 million as compensation for pre–1980 discrimination claims to be divided among all members of the Hammon class who were members of the Fire Department on January 1, 1980, Agreement, Appendix I, Part A ¶¶ 8–10; (2) no more than $1 million as compensation for post–1980 discrimination in hiring claims to be divided among all members of the Hammon class who completed the 1980 hiring test and either were never hired or were hired after the average date on which white test-takers were hired (July 1, 1982), *id.* Part A ¶¶ 12–14; and (3) $100,000 as compensation for individual class members who contributed to the litigation by rendering services

on their own time or who bore "special burdens ... during this litigation," Proposed Consent Decree, Appendix II, Part I ¶ 25.

About forty retired firefighters (most of whom were represented at the Fairness Hearing by Joel P. Bennett) object to the cut-off date of January 1, 1980 because it would preclude them from sharing in the settlement fund. The Special Master and counsel for all the parties chose this cut-off date only after extensive discussions and careful consideration of the relative weakness of these retirees' claims due to the City's potentially devastating statute-of-limitations defense.[7] The City made it very clear to everyone involved in this lawsuit that, if settlement talks were to break down, the City would assert and vigorously litigate a statute-of-limitations defense since the discrimination giving rise to the pre–1980 claims occurred, if at all, over four years before the filing of this lawsuit. However, to avoid litigating this issue and having to determine precisely when acts occurred on a case-by-case basis for the numerous members of the Hammon class, the City agreed to waive its statute-of-limitations defense, and counsel for all the parties (including the Hammon plaintiffs' attorney) as well as Special Master agreed that it was highly likely that claims by any firefighter who retired before January 1, 1980 would be time-barred.[8]

---

6. Joan Burt's extensive discussion of the claims by named plaintiffs and individual class members claiming under them is the epitome of such speculation. *See* Hammon Plaintiffs' Post–Fairness Hearing Report to the Court at 10–15. This part of the report lists specific amounts for claims of retaliation, harassment, embarrassment, and a wide variety of other indignities allegedly suffered by individual class members including named plaintiffs without recognizing that, at this point, they are nothing more than allegations or claims. There is no indication that any of these claims are supported by sufficient proof to pin liability on the City at trial (assuming this case went to trial) nor is there any indication that the exact sums of money that Joan Burt proffers are accurate measures of the relief that would be awarded even if the City were held liable. The Hammon plaintiffs' report erroneously treats harassment/retaliation types of discrimination claims as if they were claims for liquidated damages or for sums certain under a contract, making the fallacy of

equating claims for finite sums of money with monetary remedies awarded by a fact-finder after a trial.

7. Although there are about 189 retired black firefighters included in the Hammon class, only approximately 40 objected to the January 1, 1980 cut-off date. Moreover, of those retirees who objected, over half of them retired in or long before 1976—over *seven* years before this lawsuit was filed and well over three years before the Holmes–Sheffield administrative complaints were filed (which in any event only alleged discrimination beginning in October 1979, *see Hammon,* 813 F.2d at 413.).

8. In fact, the parties and the Special Master correctly recognized that there are some claims by class members who were firefighters on January 1, 1980 that probably would nevertheless have been time-barred, but the parties agreed that this cut-off date would provide somewhat of a cushion to ensure that no legally meritorious claims would be extinguished.

■ Although the Court feels great sympathy and admiration for the older retired firefighters who probably suffered the most (enduring that period when discrimination in the Fire Department was institutionalized and its most extreme), the Court must evaluate the strengths and weaknesses of the class members' claims within the framework of their likelihood of establishing liability and damages at trial. *See In Re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 145, 171 (2d.Cir.1987) (evaluating district court's approval of settlement by examining strength of claims, which were allegedly "serious" judging by amount of damage class members suffered, in terms of the likelihood of prevailing on liability), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Moreover, in evaluating the formula for apportioning the settlement fund, the Court keeps in mind that "[d]istrict courts enjoy 'broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members equitably.'" *In Re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 179, 181 (2d Cir.1987) (quoting *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir.1978)), *cert. denied*, 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 932 (1988). In view of the likelihood that the retirees' claims would be time-barred and the fact that counsel for all the parties (including the Hammon plaintiffs' counsel when signing the Settlement Agreement) and the Special Master all agreed that the January 1, 1980 cut-off date was proper, the Court holds that the Settlement Agreement is fair, adequate, and reasonable and must be approved over the retirees' objections.[9] *See id.* at 182 (district court has "discretion to adopt whatever distribution plan [it] determine[s] to be in the best interests of the class as a whole *notwithstanding the objections of class counsel or of a large number of class members*" (emphasis added; citations omitted)).

Another objection to the allocation of the settlement fund envisioned by the Settlement Agreement and the Proposed Consent Decree—not raised until the Hammon Plaintiffs' Post-Fairness Hearing Report to the Court—is that certain named plaintiffs and individual class members claiming under them should receive additional money for suffering more serious discrimination than the other class members. *See supra* note 6. Under the Settlement Agreement, the named plaintiffs—who are properly members of the Hammon class[10]—would receive: (1) a share of the $2.4 million (if working for the Fire Department on January 1, 1980) allocated to pre–1980 discrimination claims in direct proportion to how many years that plaintiff worked for the Fire Department or (2) a share of the $1 million allocated to claims arising out of the administration of the 1980 hiring test. In addition to the foregoing, the Proposed Consent Decree addresses the possibility that certain class members experienced more serious discrimination by allowing them to submit claims for shares of the $100,000 amount set aside for those members who made litigation contributions or bore "special burdens" as identified by the Hammon plaintiffs.

Thus, although nothing is definite yet since claims forms have not been submitted

---

9. Nor does the common objection submitted by Joel Bennett on behalf of most of the retired firefighters shake the Court's conclusion. Nowhere does this one-and-a-half page filing even attempt to dispute the proposition that, if this litigation were to proceed, the retirees' claims would be time-barred. Furthermore, contrary to the filing's assertions (unsupported by any authority) that the Settlement Agreement is unfair to the retirees and confers a disproportionate benefit upon other class members, use of the cut-off date properly recognizes that the retirees' claims are weak as a matter of law and that it is fair to distribute the settlement fund in direct proportion to the relative strength of the class members' claims.

10. An examination of the allegations contained in the Hammon plaintiffs' Amended Complaint reveals that two of the named plaintiffs, Rose L. Queen and Gregory R. Lee, apparently neither were firefighters nor took the 1980 hiring test. *See* Amended Complaint ¶¶ 13 & 14 (alleging that Rose L. Queen and Gregory R. Lee were employees of the City government who suffered retaliation for testifying at the Holmes–Sheffield administrative hearings). If that is the case, then these two named plaintiffs (as well as individuals claiming under them, if any) are of course not members of the Hammon class and would not be entitled to any share of the settlement fund.

and precise calculations have not been made, it appears to the Court on this record that, as a result of these three sub-divisions of the settlement fund, each of the named plaintiffs would receive some amount of monetary relief (as well as promotions or the opportunity to take promotional tests).[11] Therefore, the Court is not persuaded that the Settlement Agreement should be rejected because certain plaintiffs do not receive more money.

Finally, about two objectors argued that the heirs or estates of those deceased firefighters who otherwise would have shared in the settlement fund should be entitled to recover monetary relief on behalf of the decedent. All the parties and the Special Master have agreed to modify the proposed Claims Form to accommodate the heirs or estates of deceased firefighters in accordance with these few objections, *see* October 16 Meeting with Special Master Tr. at 19–20, and the Court also approves of this slight modification to the Claims Form, especially since the Settlement Agreement did not address this issue one way or the other.

### E. Union Voting Procedures

The Court received about six objections based on the voting procedure utilized to determine whether Local 36 would ratify the Settlement Agreement signed, subject to Local 36 ratification, by the counsel for the Byrne plaintiffs and Local 36. Instead of resorting to mail notice of the proposed settlement—which would have consumed four or five weeks that could not be spared in view of the rapidly approaching December test date—the Special Master directed that voting occur within one week of the Settlement Agreement's being signed, and

the Union President and counsel agreed that this procedure was feasible. Consequently, the Settlement Agreement was widely circulated among union members and was even posted in the various firehouses. In light of the great attention this litigation has received among union members, the ensuing vigorous debate, and the representations of the Union President, counsel for the Byrne plaintiffs, and the Special Master, the Court is fully satisfied that the notice and voting procedures were perfectly proper and that all interested union members had a fair opportunity to be heard. Indeed, the packed Courtroom, with standing room only, at the October 23, 1990 Fairness Hearing demonstrates that all interested parties are aware of what has taken, and is taking, place in this case and that the various notices were effective. *See* Notices, Appendix III.

### F. Use of Lists For Immediate Promotions

Of the total number of objections registered against the Settlement Agreement orally or in writing, a relatively large number challenge some aspect of the procedure for making about 180 immediate promotions (for vacancies existing as of March 1, 1989) from lists based upon the last promotional exam administered in 1984. Some class members want more immediate promotions while others argue that those who served in an acting capacity should have preference for promotions, and still others contend that these lists should not be relied upon to fill all of the vacancies because they usually would be valid for only two years.

---

**11.** Due to the unique circumstances of Marvin K. Hammon's background—apparently he worked at the Fire Department during the 1970's; resigned in good standing to move to Louisiana in 1977; returned and was told to take the 1980 exam; and then was finally re-hired in 1985—none of the parties objected to the Special Master's on-the-record suggestion that the January 1, 1980 cut-off date will not apply to him. *See* October 16, 1990 Meeting with Special Master Tr. at 20–21. As for Larry McMillan, another named plaintiff, although he would seem to be precluded by the January 1,

1980 cut-off date from sharing in the $2.4 million part of the settlement fund, the Court can perceive no reason why he would not be entitled to recover part of the $100,000 set-aside amount if he can substantiate his allegations of great harassment and retaliation. Of course, both Hammon and McMillan (along with most of the other Hammon class members) will also benefit greatly from the creation of a fourth platoon and the opportunity to take promotional tests in December 1990 and in the first half of 1991.

However, most, if not all, of these objections are motivated by the self-interest of the individual objector, and none of them indicate that the Settlement Agreement's procedure for making immediate promotions unfairly benefits any one *group* of firefighters at the expense of any other group.[12] Moreover, the objections that rely upon the usual two-year life-span of promotional lists overlook the unfortunate but undeniable reality that nobody—not the parties, not the Special Master, and not this Court—can turn back the clock and duplicate exactly what would have occurred if promotional tests had been given in 1986 and 1988. In short, because this is no longer a "usual" situation, the "usual" rules and procedures utilized to make promotions in the past should not be blindly applied. All of the parties recognized that immediate promotions are absolutely essential for the public safety, not to mention improving Fire Department morale for both the Hammon and the Byrne classes.[13] The Court is satisfied that using the 1984 promotional lists to make immediate promotions while also creating a new (fourth) platoon is a fair, reasonable, and non-race-based procedure relying upon seniority and past test results, which comes as close as possible to remedying the lengthy delay in promotions in the Fire Department.[14]

### G. Administration of New Promotional Tests

Under the Settlement Agreement and Proposed Consent Decree, fair, non-discriminatory, job-related promotional tests would be administered: (1) in December 1990 to fill vacancies arising after March 1, 1989 and before June 1, 1991 (including the 89 new Sergeant, Lieutenant, and Captain vacancies arising from the creation of a fourth platoon by June 1, 1991) and (2) sometime in 1991 so as to permit announcement of the promotional registry by August 1, 1991 to fill vacancies arising after June 1, 1991. Some class members object that it is unfair to permit their colleagues who benefit from the immediate promotions discussed above to also take these two soon-to-be-administered promotional tests. However, these objections in effect argue for applying rules and procedures developed for usual situations to this highly unusual situation, displaying the same fallacious reasoning rejected above. *See supra* Section F. The City needs immediate promotions based upon fair promotional tests; the TDC has been working diligently, with the Special Master's assistance, to complete the December 1990 promotional test; and class members on both sides of

---

**12.** Although some firefighters, who have been serving during this litigation at a higher rank in an acting capacity, will not be promoted immediately under the Settlement Agreement, there is no indication on this record that any of them were ever promised promotions. Moreover, the parties have stated that these firefighters were specifically told that serving in an acting capacity would provide no basis for preferential consideration when permanent promotions were made. *See* Proposed Consent Decree, Appendix II, Part Two ¶ 3. Finally, the firefighters serving in an acting capacity have the opportunity to take the promotional tests and compete for promotions for all vacancies arising as of March 1, 1989.

**13.** The importance of these immediate promotions is underscored by the fact that, despite initially registering forceful opposition to relying upon the 1984 promotional lists to fill any vacancies arising after October 15, 1986, the Byrne plaintiffs and Local 36 ultimately agreed with the Hammon plaintiffs to this procedure. Moreover, the Court is extremely perplexed by the Hammon plaintiffs' implicit criticism of reliance on the promotional lists, *see* Hammon

Plaintiffs' Post–Fairness Hearing Report to the Court at 16 n. 15, because all along the Hammon plaintiffs have fought tooth-and-nail in favor of using those same promotional lists to make immediate promotions.

**14.** About two objecting class members who are retired argue that the Settlement Agreement's promotion procedures should be modified to give them retroactive promotions and increase their retirement benefits. However, that objection is without merit because it would confer an unexpected wind-fall benefit upon these individuals, who are no worse off under the Settlement Agreement than they expected when they retired. They decided to retire and collect their benefits, thus avoiding the continuing risk that this litigation would destroy their chances for advancement. On the other hand, those class members who decided not to retire assumed the risk that their chances for advancement could be stunted indefinitely by this litigation, and, in return for that decision, they properly benefit under this Settlement Agreement.

this lawsuit have already waited much too long for the "privilege" of taking a promotional test. In fact, for many class members the December 1990 promotional test will be their first opportunity for a promotion. Under these unique and unfortunate circumstances, the Court sees nothing wrong with a Settlement Agreement that increases the opportunities for *all* long-suffering firefighters to take promotional tests quickly to make up for the absence of promotional tests during the last six years.

One common objection to the Settlement Agreement's procedures for administering promotional tests has been raised by some, if not all, of the members of the "Fire Prevention" unit of the Fire Department (as opposed to the much more larger "Fire Suppression" unit), who contend that the Settlement Agreement should be modified to require a promotional test for Fire Suppression separate from the Fire Prevention test. However, the Special Master, the Byrne plaintiffs, and the City have presented several persuasive reasons why this objection is insufficient to require rejection of the Settlement Agreement: (1) the number of vacancies in the Fire Suppression unit is so low (perhaps only one) that administering entirely different Sergeant, Lieutenant, and Captain promotional tests for the Fire Suppression unit is not economically sound; (2) in the short time remaining, the TDC cannot complete the December 1990 promotional test and also develop separate Fire Prevention tests; (3) Fire Prevention personnel would be eligible to take the unitary promotional tests and compete with Fire Suppression personnel for vacancies throughout the Fire Department; and (4) fully cognizant of the City's historic practice of administering one unitary promotional test, Fire Prevention personnel nevertheless voluntarily elected to serve in that unit instead of Fire Suppression.

However, despite the foregoing convincing reasons that militate against the objections by Fire Prevention personnel, all of the parties and the Special Master have pledged that they would continue to give serious consideration to these objections, and the City has agreed to reserve any vacancy or vacancies in the Fire Prevention unit until the parties, working with the Special Master, have arrived at a fair promotional system for the Fire Prevention personnel. In light of the factors supporting the administration of a unitary promotional test *at this time* and the assurances by all the parties and the Special Master that they are receptive to the Fire Prevention objectors' concerns and are working diligently to consider alternatives to accommodate the Fire Prevention unit,[15] the Court holds that the objections submitted by members of the Fire Prevention unit are insufficient to preclude this Court from approving the Settlement Agreement as a fair resolution of this litigation.

### H. Final Certification

■ Having decided that the Settlement Agreement signed by all the parties on August 20, 1990 should be approved pursuant to Fed.R.Civ.P. 23(e), the Court must also make a final certification of the two classes in this case as required by Fed.R. Civ.P. 23(c)(3), since this lawsuit is clearly a Rule 23(b)(2) type of class action and properly has been treated as such throughout this litigation. Only for purposes of settlement and entry of the Court's Decree implementing the parties' Settlement Agreement, the Court makes a final certification that the Hammon plaintiffs represent a class composed of black uniformed D.C. Fire Department employees and past, present, and future applicants for employment therein and that the Byrne plaintiffs represent a class composed of white uniformed D.C. Fire Department employees who took the 1984 examinations for promotions to the ranks of Sergeant, Lieutenant, and Captain. Furthermore, the Court finds that: (1) the Hammon and Byrne classes are so numerous that joinder of

---

**15.** Most recently, the Special Master has informed the Court that he and the parties are seriously considering the Fire Prevention personnel's newest suggestion that a merit system of promotions for the Fire Prevention unit may be more cost-effective than administering a separate promotional test.

their respective members is impracticable; (2) there are questions of law and fact common to each of the classes; (3) the claims of the respective named plaintiffs are typical of the claims of each of the classes they represent; and (4) the representatives of the Hammon and Byrne classes fairly and adequately protected the interests of their respective classes. *See* Fed.R.Civ.P. 23(a).

## I. Minor Modifications and Entry of Conditional Decree

■ The parties have consistently agreed that this Court, once it approves the Settlement Agreement, may enter its own Decree in accordance with the terms of that Settlement Agreement should all three parties be unable to agree upon a consent decree. The Court holds that the Proposed Consent Decree, which has been proffered and supported by the Special Master and signed by the City and the Byrne plaintiffs, *see* Proposed Consent Decree, Appendix II, properly implements the Settlement Agreement and is in no way inconsistent therewith. Furthermore, the Court holds that Joan Burt's objections and suggested modifications to the Proposed Consent Decree contained in the Hammon Plaintiffs' Post–Fairness Report to the Court not only are meritless but also directly contradict the final and binding Settlement Agreement that she signed on the Hammon plaintiffs' behalf as well as her on-the-record statements approving the Proposed Consent Decree. Therefore, the Court will adopt—with some modifications—the Proposed Consent Decree, attached hereto as Appendix II, as its own Decree, but will order that the Decree will not become effective for several days to give the parties one last opportunity to submit a consent decree signed by all three parties.

In addition, the Court will make certain modifications—not inconsistent with the Settlement Agreement—to the Proposed Consent Decree before adopting it as the Court's Decree. First, the Court sees no reason why the City should be held to its end of the bargain contemplated by the Proposed Consent Decree and required to make an immediate lump-sum payment of $150,000 to the Hammon plaintiffs as interim attorneys' fees when it no longer has the assurance that the Hammon plaintiffs, who refused to sign the Proposed Consent Decree, will not appeal the Court's Decree entered in accordance with the Settlement Agreement. Therefore, the Court will modify those provisions that require the City to make a lump-sum $150,000 payment for interim attorneys' fees to counsel for each of the classes and will order that these payments be placed in separate funds (also separate from the $3.5 million special fund) under the Special Master's supervision and be disbursed only to Joan Burt and Dovey Roundtree (for the Hammon plaintiffs) and to the law firm of Bredhoff and Kaiser (for the Byrne plaintiffs) and only after the period for appeals expires and appeals, if any, are decided or dismissed.[16]

Second, the Court recognizes the unfortunate fact that, since all the parties did not sign the Proposed Consent Decree, they are not bound by the provisions contained therein prohibiting parties from appealing the Court's Decree. However, notwithstanding the foregoing, the Court expresses its sincerest hope that all of the parties will realize that it is not in their best interest to attack and further delay the substantial benefits they would receive under the Settlement Agreement and Decree.

Finally, the Court will approve the Claims Form, *see* Appendix IV, upon the condition that the Special Master and the parties modify the form to: (1) enable heirs or estates of deceased firefighters to submit claims; (2) make it clear that class members may submit claims for special burdens borne during the course of this litigation (as well as special services rendered on behalf of the class); (3) make

---

**16.** Moreover, the Court will order that any interest accruing on these funds pending appeals, if any, may be used to pay the Hammon plaintiffs' and the Byrne plaintiffs' portions of the Special Master's fees and expenses and that the remainder of the accrued interest, if any, will be returned to the City.

January 2, 1991 the deadline for submission of claims forms; and (4) require that the forms be sent, not to the Clerk of the Court, but to a post office box under the Special Master's supervision.

### III. Conclusion

It is well established that, "[p]articularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Moreover, "litigants should be encouraged to determine their respective rights between themselves." *Id.* In this case, three parties who have been antagonistic and unable to agree on much of anything over a period of several years have now agreed upon one document to resolve this lawsuit, and all three parties signed this document, referred to herein as the Settlement Agreement, on August 20, 1990. Furthermore, the Court has been intimately involved in this case since 1984, has reviewed and considered all of the objections submitted against the Settlement Agreement, and has " 'closely and carefully scrutinize[d] the ... [Settlement Agreement] to make sure that it [is] fair, adequate and reasonable.' " *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir.1990) (quoting *Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir.1982)). In light of the foregoing, the Court, in the exercise of its broad discretion in this matter, *see id.*, approves the parties' Settlement Agreement as a fair, adequate and reasonable resolution to this litigation and conditionally enters a Decree to implement that Settlement Agreement.

The Court will issue an Order of even date herewith in accordance with the foregoing Opinion.

### DECREE AND ORDER

In accordance with the Court's Opinion of even date herewith, it is, by the Court, this 6th day of November, 1990,

ORDERED that the August 20, 1990 Settlement Agreement signed by all of the parties shall be, and hereby is, APPROVED as a fair, adequate, and reasonable resolution of this class action; and it is

FURTHER ORDERED that, to implement the Settlement Agreement approved in the preceding ordered paragraph, the Court adopts as its Decree and incorporates by reference herein the Proposed Consent Decree attached hereto as Appendix II in its entirety, with the modifications set forth below:

(1) the last sentence of the first full paragraph on page 2 and the last sentence on page 2 shall be, and hereby are, deleted;

(2) the following shall be added at the end of paragraph 15 on page 10: "Once the period for appeals has expired and all appeals, if any, have been completely decided or dismissed, and if the settlement is upheld, interest on the $3,500,000 special fund shall accrue to the Hammon plaintiffs for disbursement to individual class members as the Hammon plaintiffs and the Special Master see fit. If the settlement is not upheld, all funds shall be returned to the City, subject only to approval of the Court.";

(3) paragraph 29 on page 14 shall be, and hereby is, deleted;

(4) paragraph 31 on page 15 shall be, and hereby is, deleted and replaced by the following: "The Court approves the claims form attached to this Decree as Appendix IV so long as the Special Master and the parties modify the form to: (a) permit heirs or estates to submit claims on behalf of deceased firefighters, (b) make it clear that class members may submit claims for special burdens borne during the course of this litigation (as well as for special services rendered on behalf of the class), (3) make January 2, 1991 the deadline for submitting claims forms, and (4) change the address, to which claims forms should be sent, to a post office box under the Special Master's supervision. So modified, this claims form shall be distributed to all class members who currently are Fire Department employees and to all persons who file, or have already filed, a request for a claims form in response to mail, publication, or personal notice. All claims forms must be received by the Special Master on or before January 2, 1991. Only members of the

class who file timely claims forms may receive compensation, although all members of the class are bound by the provisions of this Decree.";

(5) paragraph 33 on page 15 shall be, and hereby is, deleted and replaced by the following: "Within 10 days of the effective date of this Decree, the City shall place in a fund, under the Special Master's supervision but separate from the $3,500,000 special fund referred to in paragraph 15 *supra*, $150,000 for interim attorneys' fees for the Hammon plaintiffs' counsel, Joan Burt and Dovey Roundtree. The parties agree that, unless this settlement is not upheld, the Hammon class is a prevailing party to a significant extent and that therefore Joan Burt and Dovey Roundtree, as class counsel, are entitled to apply for costs (which shall not include Special Masters' fees) and reasonable attorneys' fees as set forth in paragraph 34 *infra*. If disbursed, the $150,000 interim attorneys' fees payment shall be set-off against any costs and attorneys' fees recovered later. No distribution of the $150,000 shall be made until the period for appeals expires and appeals, if any, are completely decided or dismissed. Any interest accruing on this $150,000 fund pending appeal, if any, may be used to pay part of the Hammon plaintiffs' portion of the Special Master's fees and expenses, and the remainder, if any, of the interest shall be returned to the City.";

(6) the first sentence of paragraph 34 on page 16 shall be, and hereby is, deleted and replaced by the following: "Within 30 days of the date on which the period for appeals expires and appeals, if any, are completely decided or dismissed, unless the 30–day period is extended upon written application to the Special Master, Joan Burt and Dovey J. Roundtree, counsel for the Hammon plaintiffs, shall submit to the Special Master any applications they may have with respect to attorneys' fees and costs.";

(7) paragraph 35 on page 16 shall be, and hereby is, deleted and replaced by the following: "No attorneys' fees shall be awarded for any time spent filling out claims forms by, or on behalf of, individual class members.";

(8) paragraph 17 on page 22 shall be, and hereby is, deleted and replaced by the following: "Within 10 days of the effective date of this Decree, the City shall place in a fund, under the Special Master's supervision but separate from the $3,500,000 special fund referred to in paragraph 15, Part One *supra*, $150,000 for interim attorneys' fees for the Byrne plaintiffs' counsel, the law firm of Bredhoff and Kaiser. The parties agree that, unless this settlement is not upheld, the Byrne class and Local 36 are prevailing parties to a significant extent on those issues in which they participated and that therefore Bredhoff and Kaiser, as class counsel, are entitled to apply for costs (which shall not include Special Masters' fees) and reasonable attorneys' fees. If disbursed, the $150,000 interim attorneys' fees payment shall be set-off against any costs and attorneys' fees recovered later. No distribution of the $150,000 shall be made until the period for appeals expires and appeals, if any, are completely decided or dismissed. Any interest accruing on this $150,000 fund pending appeal, if any, may be used to pay part of the Byrne plaintiffs' portion of the Special Master's fees and expenses, and the remainder, if any, of the interest shall be returned to the City. Within 30 days of the date on which the period for appeals expires and appeals, if any, are completely decided or dismissed, unless the 30–day period is extended upon written application to the Special Master, Bredhoff and Kaiser, counsel for the Byrne plaintiffs and Local 36, shall submit to the Special Master any applications they may have with respect to attorneys' fees and costs. The Special Master shall work with all counsel and the defendants in an effort to arrive at an agreement on fees to be paid. If the parties are unable to reach agreement, the Special Master shall make findings and recommendations to the Court, and the Court shall decide the amount of fees and costs to be awarded."; and it is

FURTHER ORDERED that all of the parties shall be, and hereby are, permanently enjoined to carry out the terms of the Settlement Agreement and to do all

that is required by the procedures set forth in this Decree; and it is

FURTHER ORDERED that the City shall refrain from making promotions to fill any and all vacancies in the Fire Prevention unit of the Fire Department until such time as the parties working with the Special Master have arrived at a fair promotional system for Fire Prevention personnel; and it is

FURTHER ORDERED that, in light of the importance of proceeding with the implementation of the terms of this Decree to permit administration of the December 1990 promotional test, no stay of any portion of this Decree shall be granted; and it is

FURTHER ORDERED that, if any party files an appeal, this Court will determine what bond, if any, to require pursuant to Fed.R.Civ.P. 62(c); and it is

FURTHER ORDERED that, notwithstanding anything contained herein, the Hammon plaintiffs, the Byrne plaintiffs, and the City shall each remain obliged to promptly pay one-third of the Special Master's fees and expenses, as set forth in previous Court orders, and counsel for all the parties are reminded of their fiduciary obligations as officers of the Court to see that said fees and expenses are promptly paid; and it is

FURTHER ORDERED that this Decree shall automatically become effective at 4:00 p.m., November 9, 1990, unless before then the parties, with the Special Master's assistance, submit for the Court's approval a consent decree signed by all three parties, in which case this Decree will not become effective until the Court determines whether to accept the parties' newly-proposed consent decree or enter its own decree; and it is

FURTHER ORDERED that the administration of the promotional tests required under the Settlement Agreement and this Decree shall proceed; and it is

FURTHER ORDERED that, within 10 days of the date on which this Decree takes effect, the City shall place $3,500,000 in a special fund under the Special Master's supervision and shall also place the two $150,000 payments for interim attorneys' fees in separate funds under the Special Master's supervision; and it is

FURTHER ORDERED that, because all the parties agreed to settle all of their disputes and terminate this litigation by signing the Settlement Agreement, the above-captioned consolidated cases shall be, and hereby are, DISMISSED, without prejudice, subject only to the Court's continuing jurisdiction over issues related to attorneys' fees, Special Master's fees, or implementation of this Decree.

## APPENDIX I

**SPECIAL MASTER'S PROPOSED FINAL AGREEMENT AMONG HAMMON PLAINTIFFS, BYRNE PLAINTIFFS, AND LOCAL 36 AND THE CITY**

This agreement has been drafted by the Special Master, who has for purposes of encouraging discussions, circulated for private consideration other drafts, but who has asked that all prior drafts be considered privileged, preliminary discussion material and not circulated beyond counsel and principal representatives of each party. In an effort to promote settlement and to clear the air with respect to what the Special Master believes would be a fair and equitable--but by no means perfect--resolution of all claims and disputes, the Special Master has prepared a proposed agreement. It may be shown to anyone and is not intended to be confidential.

It should be clear that no party approved this proposed settlement agreement prior to its circulation. The proposed agreement represents a way of resolving all issues at a cost to the City which the Special Master believes is reasonable and defensible; provides compensation for alleged past discrimination, some of which might otherwise be barred by a statute of

limitations in the interests of achieving substantial justice; and assures that no individual is favored or disadvantaged with respect to job opportunities in the Fire Department on the basis of race.

The views of no one party predominate. Some provisions of this agreement are included despite the Special Master's knowledge that they are objectionable to one or even two parties. But, the Special Master is persuaded that the agreement is fair overall, that it provides all parties with knowledge as to what amount of money is to be paid and what other remedies are to be provided, it will provide much needed promotions sooner than any other plan, and the public should find it responsive to its needs as well as the needs of all litigants.

This proposed agreement is divided into two parts. The first relates to hiring and all related claims. The second relates to promotions. If the Hammon plaintiffs, the Byrne plaintiffs and the City together agree on Part B and sign it, And, if the Hammon plaintiffs and the City agree on Part A and sign it, the Special Master will ask the Court to approve the agreement, notwithstanding any opposition from the Byrne plaintiffs or from any other source to the monetary amount provided or any other remedy set forth in Part A. Neither Part A nor Part B will be effective unless both parties are ratified by the parties thereto.

PART A
SETTLEMENT AGREEMENT AS TO HIRING AND RELATED ISSUES BETWEEN THE HAMMON PLAINTIFFS AND THE CITY

Summary of Agreement

1. This agreement sets forth all essential terms of the settlement of hiring and related issues (defined as all issues other than future promotions). It does not set forth in detail all procedures and details, which shall be provided in a more comprehensive decree which the Hammon plaintiffs and the City will develop with the Special Master for submission to the Court.

2. This agreement between the Hammon plaintiffs and the City is executed simultaneously with an agreement on future promotions (Part B) among the Hammon plaintiffs, the Byrne plaintiffs, and the City.

3. This agreement and the simultaneous agreement on future promotions, resolve all claims and binds all members of the Hammon class, and no member of the Class may sue the City or any department or representative, or any party to this settlement with respect to any matter raised in this litigation. The agreement resolves all disputes as to matters arising as of the date it is executed, but does not resolve disputes resulting from future events, tests, decisions, etc. that occur after the date of this agreement.

4. This agreement provides substantial monetary relief to the Hammon class. The City shall pay $3,500,000, to the Hammon class, independent of attorney's fees which may be sought subsequently, and this entire sum shall be distributed to the Hammon class as provided in this agreement.

5. The monetary compensation provided herein has been allocated, to the greatest extent practicable, in accordance with the strength of the individual claims of class members.

6. The amount of compensation $3,500,000 shall be placed in a special fund prior to October 15, 1990, and shall be distributed as soon as possible thereafter in accordance with this agreement, provided that the promotions set forth in Part B, paragraph 5 have been made.

7. The Special Master will work with the parties to provide a detailed decree for consideration by the Court as early as possible.

## Pre-1980 Compensation

8. Of the $3,500,000, $2,400,000 is allocated to members of the Hammon class who were also members of the Fire Department on January 1, 1980. Each member of the class shall receive compensation for each year from 1962-1979 in which he or she served as a member of the Department. The compensation will be allocated as follows: (a) 70% of the total amount is allocated to the years 1962-1968, (b) 20% of the total amount is allocated to the years 1969-1972, and (c) 10% of the total amount is allocated to the years 1973-1979.

9. Under paragraph 8, $1,680,000 will be allocated to the years 1962-1968, $480,000 to the years 1969-1972, and $240,000 to the years 1973-1979.

10. Allocation of these sums will be made as follows: The amount allocated to each of the three periods will be divided by the total number of firefighter years of the eligible member of the Hammon class. For example, if 50 eligible firefighters each worked all seven years from 1962-1967, and if 50 other eligible firefighters worked five of the years from 1962-1967, the total number of workyears would be 600 (50 x 7= 350, + 50x5= 350). The $1,680,000 would be divided by 600, and the figure of $2800 per workyear would used as the basis for awarding this portion of the pre-1980 monetary award. An identical process would be used for the periods, 1969-1972, and 1973-1979. The total award for any firefighter eligible for pre-1980 damages would be based on the total of the work year figures for the three periods.

11. In addition to the $2,400,000, an additional sum may be available to be paid as additional damages for the years 1962-1968, as provided in paragraphs 15 and 17, infra. If any such sum is available, it will be divided by the total work years for this period, and a resulting award for eligible firefighters will be made as a supplementary payment.

## Post-1980 Claims

12. The total amount available for compensation for post-1980 claims is $1,000,000. This amount will be distributed as stated in paragraphs 13, 14 and 15, infra.

13. Each member of the Hammon class who completed the 1980 hiring examination and who was hired by the Fire Department will receive the following: $150 per month for each month between July 1, 1982 and the actual date of employment as a firefighter.

14. Each member of the Hammon class who completed the 1980 hiring examination and was never hired by the Fire Department will receive the following: $100 per month for each month between July 1, 1982, and the date when the City notified the

class member that a position as a firefighter was available. The total paid to these class members shall not exceed $500,-000.

15. Should the total amount of the payments made pursuant to paragraphs 13 and 14 be less than $1,000,000, the remainder shall be used to pay supplemental damages for pre-1980 claims for the years 1962-1968, as provided in paragraph 11, supra.

16. The Special Order issued by the Fire Department which provided an EOD date of April 12, 1981 for all firefighters hired from the 1980 list, including all members of the Hammon class, shall remain in full force and effect in the future.

## Litigation Contributions

17. A total of $100,000 shall be set aside to compensate individual members of the Hammon class for services rendered in this litigation on their own time. Any member of the Hammon class may submit a claim to the Special Master indicating the hours worked, the services rendered, and the amount claimed. The Special Master shall have discretion to award an appropriate amount to any such claimant, and to distribute the $100,000 equitably among claimants. Should the total amount of the distributions made pursuant to this paragraph be less than $1,000,000 the remainder shall be used to pay supplemental damages for pre-1980 claims for the years 1962-1968, as provided in paragraph 11, supra.

18. The Hammon plaintiffs will proposes a schedule of payments and rationales, which the Special Master will approve under a reasonableness standard.

## Privacy Rights

19. The Special Master will approve all payments made pursuant to the provisions set forth above, and the total amounts paid are, by the nature of this document, public. Each member of the Hammon class shall have the right to protect the fact that he or she received payment and the amount of any payment from public disclosure.

## Timing

20. No promotions pursuant to Part B of the settlement agreement may be made until the $3,500,000 has been set aside in a fund, which will be more specifically described in the comprehensive decree to be drafted under paragraph 1, supra.

## Finality

21. This agreement resolves all claims other than future promotional claims of the members of the Hammon class. Parts A and B together resolve all claims and bind all class members with respect all claims of discrimination as of the date of this agreement.

_Joan Burt_

Joan Burt, Esq.
Counsel for Hammon Plaintiffs
Joan Burt, Esq.

_Corporation Counsel_

For the District of Columbia

August 20, 1590

## PART B
### SETTLEMENT AGREEMENT AS TO PROMOTIONS AMONG THE BYRNE PLAINTIFFS AND LOCAL 36, THE HAMMON PLAINTIFFS AND THE CITY

#### Summary of Agreement

1. This agreement sets forth all essential terms of the settlement of all issues concerning promotions which are in dispute. It will be formalized in a decree to be submitted to the Court.

2. This agreement among the Hammon plaintiffs, the Byrne plaintiffs and Local 36, and the City is executed simultaneously with Part A, an agreement between the Hammon class and the City on all other claims raised by members of the Hammon class. Together Parts A and B resolve all claims and bind all members of the Hammon and Byrne classes, and no member of either class may hereafter sue the City, any department or representative, or any party to the settlement agreement, with respect to any matter raised in this litigation.

3. This agreement resolves all disputes as to matters arising as of the date it is executed, but does not resolve disputes resulting from future events, tests, decisions, etc. that occur after the date of this agreement. In addition, this agreement does not resolve issues regarding attorney's fees and costs, and the parties reserve all rights on these issues.

4. One fundamental goal of this agreement is to enable firefighters who have waited for promotion longer than any party to this case would have wished to be promoted without further delay and to assure that future promotional opportunities will be available on a nondiscriminatory basis as soon as possible, and that equal and expedited opportunities for promotion will exist.

#### Promotions to Vacancies as of March 1, 1989

5. Promotions to Sergeant, Lieutenant and Captain will be made by using the lists attached to the October 2, 1989 Byrne/Hammon Joint Proposal to fill vacancies as of March 1, 1989. All those promoted from these lists shall be eligible to compete for promotion to the next highest rank in the examinations referred to in paragraph 7, infra.

6. A fourth platoon will be instituted by June 1, 1991, with the result that 24 new Sergeant positions, 56 new Lieutenant positions and 9 new Captain positions will be created.

#### Promotional Tests

7. To fill vacancies arising after March 1, 1989 and before June 1, 1991, the City will develop a fair promotional examination for promotions to Sergeant, Lieutenant and Captain that shall be administered and the resulting promotional registers announced on or before February 1, 1991. The period in which materials will be available for this examination may be as short as two months. The Special Master shall work with the City to find a way to meet this deadline, and shall have full authority to compel any of the parties and their consultants to do whatever is reasonably necessary to assure that the examination and announcement of the resulting promotional registers take place no later than February 1, 1991.

8. To fill vacancies arising after June 1, 1991 and for two years thereafter, the City will develop a fair promotional examination for promotions to Sergeant, Lieutenant and Captain that shall be administered and the resulting promotion registers announced on or before August 1, 1991. The period in which materials will be available for this examination may be

as short as two months. The Special Master shall work with the City to find a way to meet this deadline, and shall have full authority to compel any of the parties and their consultants do whatever is reasonably necessary to assure that the examination and announcement of the resulting promotional registers take place no later than August 1, 1991.

9. The development of these examinations is considered to be of the utmost importance, and the parties will cooperate in all reasonable ways to assist in meeting these deadlines and assuring the opportunities for nondiscriminatory promotions are present in the Fire Department.

10. The Hammon and Byrne plaintiffs retain the right to challenge the tests referred to in paragraphs 7 and 8, supra, and any subsequent examinations, the process in which they are developed, and the administration or use of tests.

<u>Announcement of Promotions</u>

11. As soon as possible after this agreement is ratified by all parties, members of the Fire Department will be informed of the fact that the City plans to offer the promotional tests set forth in paragraphs 7 and 8, supra.

12. Prior to October 1, 1990, the Special Master shall indicate to the parties the plan he has found to be adequate to provide the tests set forth in paragraphs 7 and 8, supra.

<u>Timing</u>

13. Promotions pursuant to paragraph 5, supra, shall be made on or before 30 days after the Court's approval of this settlement agreement, but no promotions pursuant to this settlement agreement may be made until the amount specified in Part A has been set aside in a fund, as provided therein.

Joan Burt, Esq.
Counsel for the Hammon
Plaintiffs

George Cohen, Esq.
Counsel for the Byrne Plaintiffs *

For the City

Herbert O. Reid, Sr.
Corporation Counsel
For the City

Aug-st 20, 1990

* Subject to ratification by the membership of Local 36 to be complete in accordance with the Court's directive, no later than August 24, 1990.

1108

## Schedule A – Sergeant

| | | | |
|---|---|---|---|
| 1. Herlihy | 21. Deily | 41. Deaton | 61. Sims |
| 2. Wilk | 22. Grambo | 42. Dutton | 62. Neal |
| 3. Clark | 23. Wood | 43. Lockman | 63. Gaskins |
| 4. Grace | 24. Vermeire | 44. McGurk | 64. Weissmueller |
| 5. Foley | 25. Wilson | 45. Heckendorn | 65. Mattox |
| 6. Thuman | 26. Rudder | 46. Flynn | 66. Lee |
| 7. Sellitto | 27. McCartney | 47. Alston | 67. R.H. Clark |
| 8. Blair | 28. Locksley | 48. Farson | 68. Shipp |
| 9. B. Washington | 29. Byrne | 49. Thompson | 69. Fitzgerald |
| 10. E. L. Smith | 30. Jamison | 50. Barnard | 70. Graves |
| 11. Barchers | 31. Donahue | 51. Kefauver | 71. Taylor |
| 12. Reid | 32. Miller | 52. D.R. Smith | 72. Subacz |
| 13. Settle | 33. Lopford | 53. Tanis | 73. J.R. Martin |
| 14. Kelly | 34. Tyson | 54. C.R. Johnson | 74. A. Crochran |
| 15. Benson | 35. Quirk | 55. Knott | 75. T. Burrell |
| 16. Norris | 36. Yocum | 56. Gross | 76. J. Monahan |
| 17. Strawderman | 37. Moore | 57. Gerry Jackson | |
| 18. Lokey | 38. Gray | 58. Gallagher | |
| 19. Talbert | 39. Bloom | 59. McCray | |
| 20. McNally | 40. Wallace | 60. Schellenberg | |

## Schedule B – Lieutenant

| | | | |
|---|---|---|---|
| 1. Funk | 18. Mould | 35. Dean | 52. Cochran |
| 2. Herr | 19. Anderson | 36. Diggs | 53. Handley |
| 3. Harney | 20. Deck | 37. Sullivan | 54. Lewis |
| 4. Goldsmith | 21. Bingham | 38. Jardine | 55. Reese |
| 5. Settle | 22. Coughlin | 39. Spaulding | 56. T.C. Johnson |
| 6. Roberts | 23. Chroniger | 40. Williams | 57. Bartek |
| 7. Godfrey | 24. Whitley | 41. Wiggleswort | 58. P.C. Johnson |
| 8. Schaefer | 25. James | 42. Bruce | 59. Robinson |
| 9. Wood | 26. Zollares | 43. Tyndell | 60. Martin |
| 10. Pugh | 27. G. Johnson | 44. High | 61. M.L. Smith |
| 11. Belcher | 28. Haller | 45. Grant | 62. Dunn |
| 12. Wooten | 29. Proctor | 46. Hall | 63. L. Buck |
| 13. Skinner | 30. E.A. Jackson | 47. Drumming | 64. G. Buck |
| 14. Winokur | 31. Beacham | 48. Warner | 65. Neville |
| 15. Pestone | 32. McDuffie | 49. Waters | 66. Gross |
| 16. Biggs | 33. Dwyer | 50. Stewart | 67. Rupard |
| 17. McDonald | 34. Flowers | 51. Dutton | 68. Smith |

## Schedule C – Captains

| | | | |
|---|---|---|---|
| 1. Bullock | 10. Crapo | 19. Danner | 28. Brown |
| 2. Galloway | 11. Edwards | 20. Askins | 29. Mansfield |
| 3. Grimes | 12. Chipouras | 21. Holmes | 30. Carter |
| 4. Watts | 13. Lancaster | 22. N. Peterson | 31. D'Amico |
| 5. Partain | 14. Stancovich | 23. Gourlay | 32. Harrison |
| 6. Arthur | 15. Ford | 24. Walsh | 33. Forman |
| 7. Gilbert | 16. Garrott | 25. Moton | 34. Lucas |
| 8. Callaway | 17. Francisco | 26. Sheffield | 35. O'Leary |
| 9. Madison | 18. Gould | 27. Abell | 36. Kavelak |

APPENDIX II

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

MARVIN K. HAMMON, et al., )
 )
 Plaintiffs )
 )
 v. ) C.A. 84-0903 (CRR)
 )
MARION S. BARRY, et al., )
 )
 Defendants ) FILED
_____
 ) NOV - 6 1990
KEVIN M. BYRNE, et al., )
 ) JAMES E. DAVEY, Clerk
 Plaintiffs )
 )
 v. ) C.A. 85-0782 (CRR)
 )
THEODORE R. COLEMAN, et al., )
 )
 Defendants )
_____
 )

CONSENT DECREE
Preliminary Statement

The parties request that the Court approve this Decree which is divided into two parts plus this preliminary statement. Each paragraph of this Decree is consistent with the settlement agreement signed by the parties, which explicitly stated that it contained all essential terms of the settlement.

The parties join in requesting approval provided that the Court approves the substance of both parts of the Decree. The division into parts recognizes the different interests of the Hammon and Byrne classes in their respective suits. The parties do not intend by joining in a single decree to provide standing that did not exist prior to the settlement. For example, the Byrne plaintiffs' standing exists with respect to promotions, not hiring. But, the joint nature of the decree recognizes that the settlement agreement explicitly provided that its separate parts must both be approved simultaneously for the settlement to be effective.

1110

The Decree in its totality resolves all claims of racial discrimination, whether or not asserted in the litigation, and all existing disputes among the Hammon plaintiffs, the Byrne plaintiffs, and the defendants as to racial discrimination in hiring, promotion and other Fire Department practices and omissions. The Hammon and Byrne plaintiffs expressly waive any and all claims to further relief and shall initiate no further proceedings with respect to racial discrimination in hiring, promotion or other Fire Department practices or omissions, except those proceedings explicitly permitted herein. The parties agree that remedial actions and practices required or permitted by this Decree shall not constitute unlawful discrimination under any law, regulation, or constitutional provision. All parties shall assist in defending against any challenge to this Consent Decree and against any litigation filed contrary to the terms of this Decree.

The parties also agree that no promotions made pursuant to Part Two of this Decree may be made until the $3,500,000 which the City must pay in Part One has been placed in a special fund and the Special Master has certified that such has been done. The parties further agree that there shall be no appeals from this Decree, unless explicitly provided for in the Decree.

This Consent Decree shall remain in effect for three years from the date of its approval. Upon expiration of the three year period, the Decree shall expire on its own without any further motion by the parties. Should all events contemplated by this Decree occur prior to the expiration of three years, any party may move the Court for an order that the Decree should be deemed to have expired, and the Court may so order.

DATED:

_____
Joan Burt
Hammon Class

George Cohen
Byrne Class
and Local 36

Dr. Herbert Reid
D.C. Corporation Counsel

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

MARVIN K. HAMMON, et al., )
 )
 Plaintiffs )
 )
 v. ) C.A. 84-0903 (CRR)
 )
MARION S. BARRY, et al., )
 )
 Defendants )

PART ONE OF CONSENT DECREE:
HIRING AND RELATED ISSUES

I. BACKGROUND

1. Marvin K. Hammon, et al., hereinafter collectively referred to as the "Hammon plaintiffs," filed this action in March, 1984 against the Mayor of the District of Columbia, the D.C. Office of Personnel, and the D.C. Fire Department, hereinafter collectively referred to as "the defendants." The Hammon plaintiffs sought, inter alia, declaratory and injunctive relief. On January 9, 1986, Marvin K. Hammon and ten individual plaintiffs, on their own behalf and on behalf of all persons similarly situated, and the Progressive Fire Fighters Association on behalf of past uniform employees and members of the Association, filed an amended complaint, alleging inter alia that the defendants engaged in a pattern and practice of racial discrimination in the terms and conditions of employment against blacks in violation of federal civil rights statutes and the United States Constitution.

2. Following the filing of the Hammon suit, the Hammon plaintiffs and the defendants requested that this Court approve a consent Decree which required the defendants to validate an entry level firefighter examination and to submit a proposed affirmative action plan.

3. In January, 1985, defendants promulgated an affirmative action plan calling for the consideration of race in making

promotions, and defendants made five promotions pursuant to the plan. On March 8, 1985, Kevin M. Byrne, et al. filed an action challenging those provisions of the affirmative action plan. The Byrne complaint alleged that the short-term promotion provisions of the affirmative action plan violated federal civil rights laws and the United States Constitution, and the complaint requested, inter alia, that the five promotions made pursuant to the plan be revoked. Local 36, representing the firefighters in the District of Columbia, was granted leave to intervene in the Hammon case.

4. On March 11, 1985, the United States filed a complaint alleging that the short-term hiring and promotion provisions of the affirmative action plan violated federal civil rights laws and the United States Constitution.

5. Ruling on summary judgment motions, this Court, in an order and memorandum opinion entered on April 1, 1985, upheld the affirmative action plan with respect to hiring, but not with respect to promotions. See Hammon v. Barry, 606 F. Supp. 1082. The United States Court of Appeals for the District Columbia reversed as to hiring, which was the only issue decided on appeal from the District Court's order. See 813 F.2d 412 (D.C. Cir.), rehearing denied, 826 F.2d 73 D.C. Cir. 1987), cert. denied, 486 U.S. 1036 (1988).

6. On remand to this Court, the Hammon plaintiffs, the Byrne plaintiffs and the defendants sought to achieve a settlement of the issues involved in the case. The United States was no longer a party. On April 17, 1990, the District Court appointed a Special Master to work with the parties to achieve a settlement. This consent Decree is the product of the extensive discussions that the parties have had under the supervision of the Special Master.

7. In accordance with Rule 23 of the Federal Rules of Civil Procedure, the Court has determined that the Hammon plaintiffs

represent a class composed of black uniformed employees of the District of Columbia Fire Department and applicants for employment therein, past, present and future. For purposes of settlement and entry of this Decree only, the Court makes a final certification of the class.

8. Part One of this Decree represents an effort by the parties (a) to provide appropriate compensation for persons who might have been injured as a result of hiring tests which are alleged to be insufficiently job-related and to have had an adverse impact on a racially identifiable group, and (b) to provide remedies for any vestiges of discrimination which might have adversely affected the members of the Hammon Class.

9. There is in the record evidence to support the Hammon Class's claim of a history of segregation in the District of Columbia Fire Department that lasted many years. Even after segregation in assignments was abolished, there is evidence in the record to support the claim that segregation within quarters and working conditions may have continued. Formal segregation surely ended, however, in the 1960's, and the exact dates when various aspects of alleged discrimination began, continued and/or ended are disputed. There is also evidence that in recent years, the defendants have made efforts to assure that the Fire Department does not discriminate against any racial, gender or other group, although the parties dispute the extent to which these efforts have been successful. The parties agree that the sensitive issues in this case involve determinations of who can fairly claim to have been injured as a result of past events, what remedy are such persons entitled to, and how can such a remedy be fashioned without unfairly injuring third parties who were not participants in any past acts leading to the relevant injuries.

10. The defendants expressly deny that they are currently engaged in a pattern and practice of discrimination against blacks as alleged by the Hammon plaintiffs. They recognize, however, the evidence that exists concerning the alleged history of discrimination and the evidence that exists concerning test results with respect to hiring that are set forth in paragraph 13, infra. The Hammon plaintiffs recognize that defendants and intervenors dispute their claims on the merits, and that, but for this agreement, the defendants might raise statutes of limitations and other defenses. The Hammon plaintiffs, the Byrne plaintiffs, and the defendants are desirous of avoiding the burden, delay, expense and uncertainty of further contested litigation. In the interest of public safety and the protection of the community as well as the protection of the public purse, and in a manner which will minimize the dislocation of all members of the Fire Department and serve to maintain the integrity of the public safety units contained within the Department for the purpose of fulfilling the emergency and preventive needs of the District of Columbia, the parties have agreed and consented to the entry of this Decree and to the waiver of all further proceedings except as specified herein. By entering into this Consent Decree, the defendants do not thereby admit any violations of law, rule or regulation, and defendants reserve the right to deny any violation of law, rule or regulation in any other proceeding or in any other tribunal. The Hammon Class, although settling all claims, does not admit the validity of any practice of the defendants with respect to employment.

11. This Decree, the parties agree and the Court finds, represents a reasonable resolution of all claims of past injury, and is an efficient way of moving forward toward future hirings and promotions that are nondiscriminatory.

12. Part One of this Decree resolves all existing disputes among the Hammon plaintiffs and defendants as to hiring and related issues, defined as all claims of racial discrimination in hiring or employment other than promotions, which are covered by Part Two of the Decree. No further proceedings shall be initiated by the Hammon Class with respect to hiring or any related issue with respect to any event that occurred prior to the entry of this Decree. This Decree resolves all claims of racial discrimination that were brought or that might have been brought by the Hammon Class. No member of the Hammon Class shall hereafter be permitted to claim racial discrimination in employment with the Fire Department with respect to any event occurring prior to the date the Court approves the Decree or any matter explicitly provided for in this Decree.

13. This Court previously found that the 1980 hiring examination would produce an adverse impact on blacks if the results were used to select in rank order. An administrative determination in 1983 found that the 1980 hiring examinations had not been validated as a predictor of job performance. Defendants agree that there is evidence that supports the Hammon claim that this and prior, similar hiring examinations might have discriminated against blacks.

14. Defendants agree that it is appropriate to provide a monetary remedy for members of the Hammon Class who were employed by the Fire Department between 1962-1979 and who claim that they were victims of discrimination in hiring or employment conditions, and to members of the Hammon Class who took the 1980 hiring examination and were either hired or not hired thereafter. Defendants also agree that members of the Class who made

▉▉▉▉▉▉

▉▉▉▉▉▉▉

substantial contributions to the success of the Class on their own time should be entitled to compensation for the efforts they made on behalf of the Class.

## II. MONETARY COMPENSATORY REMEDIES

15. The City shall pay the Hammon Class $3,500,000 in settlement of all claims covered by this Decree. This is the total amount to be paid to the Hammon Class or any member thereof by the City, except for attorney's fees and costs which may be awarded by the Court. The Hammon Class shall be responsible for any administrative costs of distributing the funds and shall seek no further monetary compensation from the City or any part thereof. Within 10 days of the court's approval of this Decree, the City shall place $3,500,000 in a separate special fund in a local banking institution which will be recommended by the Hammon plaintiffs and approved by the Special Master. At the Hammon Class' request, the Special Master has agreed to consider the Industrial Bank of Washington, but will assure that whatever bank is chosen is free of any conflict of interest, is secure, and is able to provide appropriate interest on the funds deposited. No disbursements from this fund may be made without the approval of the Special Master.

## Pre-1980 Compensation

16. Of the $3,500,000, $2,400,000 is allocated to all members of the Hammon class who were employed by the Fire Department on January 1, 1980, and who file claim forms alleging that they were victims of racial discrimination in employment. Each member of the class who was employed by the Fire Department on that date and who files a timely claim form shall receive

compensation for each year from 1962-1979 in which he or she served as a member of the Department. The compensation will be allocated as follows: (a) 70% of the total amount is allocated to the years 1962-1968, (b) 20% of the total amount is allocated to the years 1969-1972, and (c) 10% of the total amount is allocated to the years 1973-1979.

17. Under paragraph 16, $1,680,000 will be allocated to the years 1962-1968, $480,000 to the years 1969-1972, and $240,000 to the years 1973-1979.

18. Allocation of these sums will be made as follows: The amount allocated to each of the three periods will be divided by the total number of firefighter years of the eligible members of the Hammon class. For example, if 50 eligible firefighters each worked all seven years from 1962-1967, and if 50 other eligible firefighters worked five of the years from 1962-1967, the total number of work years would be 600 (50 x 7 = 350, + 50 x 5 = 250). The $1,680,000 would be divided by 600, and the figure of $2800 per work year would be used as the basis for awarding this portion of the pre-1980 monetary award. An identical process would be used for the periods, 1969-1972, and 1973-1979. The total award for any firefighter eligible for pre-1980 damages would be based on the total of the work year figures for the three periods in which injury is claimed.

19. In addition to the $2,400,000, an additional sum may be available to be paid as additional damages for the years 1962-1968, as provided in paragraphs 23 and 25, infra. If any such sum is available, it will be divided by the total work years for this period, and a resulting award for eligible firefighters will be made as a supplementary payment.

Post-1980 Claims

20. The total amount available for compensation for post-1980 claims is $1,000,000. This amount will be distributed as stated in paragraphs 21, 22, and 23, infra.

21. Any member of the Hammon class who completed the 1980 hiring examination and who was hired by the Fire Department will receive the following upon submission of a timely claims form: $150 per month for each month between July 1, 1982 and the actual date of employment as a firefighter.

22. Each member of the Hammon class who completed the 1980 hiring examination and was never hired by the Fire Department will receive the following upon submission of a timely claims form: $100 per month for each month between July 1, 1982, and the date when the City notified the class member that a position as a firefighter was available. The total paid to these class members pursuant to this paragraph shall not exceed $500,000.

23. Should the total amount of the payments made pursuant to paragraphs 21 and 22 be less than $1,000,000, the remainder shall be used to pay supplemental damages for pre-1980 claims for the years 1962-1968, as provided in paragraph 19, supra.

24. The remedial relief, which was ordered as a result of the administrative proceedings preceding this litigation in Fire Department Special Order No. 38, dated July 26, 1984, shall be provided and shall remain in full force and effect in the future.

Litigation Contributions

25. A total of $100,000 shall be set aside to compensate individual members of the Hammon class for service rendered in this litigation on their own time. Any member of the Hammon class may submit a claim to the Special Master indicating the hours worked, the service rendered, and the amount claimed. The Special Master shall award an appropriate amount to any such claimant at the rate of $23 per hour. The Hammon plaintiffs may seek to identify special burdens borne by individual plaintiffs during this litigation, and portions of the $100,000 may be allocated as compensation for these burdens. Before any special burdens are compensated, the Special Master must find that they are identifiable and supported by the record, and that efforts

have been made to assure that all members who have borne these burdens have been able to make a claim. Should the total amount of the distributions made pursuant to this paragraph be less than $100,000, the remainder shall be used to pay supplemental damages for pre-1980 claims for the years 1962-1968, as provided in paragraph 19, supra.

26. The Hammon plaintiffs will propose a schedule of payments and supporting rationales for any payments, including payments for services rendered on an hourly basis, which the Special Master will approve under a reasonableness standard.

### III. ADMINISTRATION OF FUNDS

27. Neither the City nor the Byrne plaintiffs shall have any control over or right to participate in the determination of compensation under this Decree. The Special Master shall determine the amount to be awarded to individual claimants under this Decree, and his decision shall be final. The Special Master shall assure conditions that he believes are reasonably necessary to preserve the security of the $3,500,000, to provide assurance that the money will be properly handled, and as provided in paragraph 30, infra, to assure an accounting from time to time upon application.

28. In deciding the amount of compensation due any member of the Hammon Class, the Special Master shall have the authority to require the parties to this Decree or employees or officers to produce relevant information--e.g., the date on which a letter was sent by the City to a person who took the 1980 hiring test, or as to the years that a person was actually employed by the Fire Department.

29. The Hammon Class shall provide for the administrative expenses, including any fees of the Special Master allocated by court order to the Hammon Class, from the special fund and any interest accruing thereon in the Special Fund.

30. The City shall have the right to request an accounting from the Special Master of funds expended from time to time and a

final accounting when the compensation has been provided to all claimants.

31. The Court approves the claims form attached to this Decree as Appendix "A." This form shall be distributed to all class members who are current employees of the Fire Department, and to all persons who file a request for a form in response to mail, published or personal notice. All claim forms must be received by the Court on or before November 30, 1990. Only members of the Class who file timely claim forms may receive compensation, although all members of the Class are bound by the provisions of this Decree.

### IV. NATURE OF INJURIES

32. The compensation provided herein is to settle claims of racial discrimination and to compensate for injuries alleged to have resulted therefrom.

### V. ATTORNEY'S FEES

33. Within 10 days of the entry of this Decree, the City shall pay $150,000 as interim attorney's fees to counsel for the Hammon Class. The parties agree that the Hammon Class is a prevailing party to a significant extent and is entitled to apply for costs and reasonable attorney's fees as a prevailing party. This initial payment of fees will assist counsel for the Class in carrying out their remaining responsibilities under this Decree. The $150,000 will be set off against the total fees to be awarded in this case. Costs do not include the Special Master's fees, which have been dealt with in separate court orders.

34. Within 30 days of the entry of this Decree, unless the period is extended upon written application to the Special Master, counsel for the Hammon Class shall submit any applications they may have with respect to attorney's fees. The Special Master shall work with all counsel and the defendants in an effort to arrive at an agreement on fees to be paid. If the

parties are unable to reach agreement, the Special Master shall make findings and recommendations to the Court, and the Court shall decide the amount of fees to be awarded.

35. No attorney's fees shall be awarded with respect to claims made for compensation under this Decree.

36. The Court finds that the Hammon Class counsel have adequately represented the class in this complex and protracted case, and have adequately considered the various and competing interests in arriving at a settlement that is fair to the class and that has produced a substantial recovery for its members.

## VI. PRIVACY RIGHTS

37. The Special Master will approve all payments made pursuant to the provisions set forth above, and the total amounts paid are, by the nature of this document, public. Except for disclosures that are required of the District under law, each member of the Hammon class shall have the right to protect the fact that he or she received payment and the amount of any payment from public disclosure, and said information shall be placed under seal by the Special Master.

## VII. TIMING

38. No promotions pursuant to Part Two of this Decree may be made until the $3,500,000 has been set aside in a fund, as described in paragraph 15, supra.

## VIII. DURATION AND FINALITY

39. The parties explicitly incorporate by reference all matters referred to in the preliminary statement in this Decree.

DATED:

---

Joan Burt
Hammon Class

Dr. Herbert Reid
Corporation Counsel
The District of Columbia

---

MARVIN K. HAMMON, et al., )
 )
 Plaintiffs )
 )
 v. ) C.A. 84-0903 (CRR)
 )
MARION S. BARRY, et al., )
 )
 Defendants )

KEVIN M. BYRNE, et al.,

 Plaintiffs

 v.

THEODORE R. COLEMAN, et al.,

 Defendants

C.A. 85-0782 (CRR)

## PART TWO OF CONSENT DECREE
### PROMOTIONS
### I. BACKGROUND

1. Paragraphs 1 through 7 of Part One of this Decree are incorporated herein by reference. The Court finds that the Byrne plaintiffs represent a class composed of white uniformed firefighters who took the 1984 examinations for promotion to the ranks of sergeant, lieutenant, or captain. For purposes of settlement and entry of this Decree only, this class determination is final. Local 36 is the recognized collective bargaining representative of the D.C. firefighters with respect to positions of sergeant, lieutenant, and captain.

2. During the course of this prolonged litigation, firefighters in the City have been unable to compete for promotion for positions as sergeant, lieutenant, and captain. The inability to compete has been frustrating to members of both the Hammon and Byrne classes and to City and Fire Department officials concerned with the morale of the Department and the safety of the City. Fairness to the Department's employees, black and white, requires that promotions take place as soon as possible. Prompt promotions will be accomplished by making immediate promotions to fill vacancies which arose prior to March 1, 1989 and by providing two promotional tests within a relatively short period of time to fill subsequent vacancies.

3. Although some firefighters who served in an acting capacity in a higher rank are not promoted under this Decree, they may compete for promotion as provided, _infra_. No firefighter who is serving in an acting capacity was promised a

promotion. Each was told that the acting position provided no basis for a claim of promotion ahead of other firefighters.

4. The creation of a fourth platoon as required herein will provide additional opportunities for promotions for firefighters, black and white, and will protect the interests of the many firefighters hired in recent years who have not yet had an opportunity to compete for promotion.

## II. PROMOTIONS TO VACANCIES AS OF MARCH 1, 1989

5. Promotions to Sergeant, Lieutenant and Captain will be made by using the lists attached hereto as Appendix "B" to fill vacancies that arose as of March 1, 1989.

6. All those promoted from these lists shall be eligible to compete for promotion to the next highest rank in the examinations referred to in paragraphs 10 and 11, infra.

## III. CREATION OF FOURTH PLATOON

7. A fourth platoon will be instituted by June 1, 1991, with the result that 24 new Sergeant positions, 56 new Lieutenant positions and 9 new Captain positions will be created.

8. The Fire Department shall accommodate the fourth platoon and shall assure that the promotional opportunities set forth in paragraph 7, immediately preceding, are available.

9. Nothing in this settlement requires the Fire Department to hire additional firefighters.

## IV. NEW PROMOTIONAL TESTS

10. To fill vacancies arising after March 1, 1989 and before June 1, 1991, the City will develop a fair--i.e., a nondiscriminatory, job-related--promotional examination for promotions to Sergeant, Lieutenant and Captain that shall be administered and the resulting promotional registers announced on or before February 1, 1991. The period in which materials will be available for this examination may be as short as two months. The positions created by the establishment of a fourth platoon are positions arising prior to June 1, 1991, so that the promotional registers announced no later than February 1, 1991 shall be used to fill these positions.

11. To fill vacancies arising after June 1, 1991 and for two years thereafter, the City will develop a fair--i.e., a nondiscriminatory, job-related--promotional examination for promotions to Sergeant, Lieutenant and Captain that shall be administered and the resulting promotion registers announced on or before August 1, 1991. The period in which materials will be available for this examination may be as short as two months.

12. The parties' settlement states that "[t]he development of these examinations is considered to be of the utmost importance, and the parties will cooperate in all reasonable ways to assist in meeting these deadlines ...." The parties have provided the Special Master with "authority to do whatever is reasonably necessary to assure" that these tests are conducted within the time periods set forth in paragraphs 10 and 11.

13. To fulfill his responsibilities under the settlement, the Special Master entered an order on September 20 with respect to the Test Development Committee (TDC). This Order requires the City and the TDC to comply with the Order and provide a test for promotions that will enable promotional registers to be announced for sergeant, lieutenant, and captain no later than February 1, 1991. The Special Master continues to have the authority and responsibility to order any party, its employees or officers, or its consultants to take any steps reasonably necessary to meet this deadline.

14. The Special Master continues to have the same authority and responsibility to order any party, its employees or officers, or its consultants to take any steps reasonably necessary to meet the August 1, 1991 deadline as stated in paragraph 11, supra. He shall issue orders as appropriate to carry out his responsibilities.

15. The 1986 Stipulation and Order Regarding Development of Promotional Procedures is superseded in its entirety by this

Decree and by any orders of the Special Master issued pursuant to the parties' settlement or this Decree.

16. The Decree requires that tests be administered and promotional registers announced by times certain. It also indicates who is eligible to take the specified tests and which vacancies will be filled from these registers. Nothing in the Decree modifies, changes, or affects other aspects of the promotional process.

## V. ATTORNEY'S FEES

17. The parties agree that the Byrne Class and Local 36 are prevailing parties to a significant extent with respect to the issues as to which they participated and are entitled to apply for costs and reasonable attorney's fees as a prevailing party. Within 30 days of the entry of this Decree, unless the period is extended upon written application to the Special Master, counsel for the Byrne Class and Local 36 shall submit any applications they may have with respect to attorney's fees. The Special Master shall work with all counsel and the defendants in an effort to arrive at an agreement on fees to be paid. If the parties are unable to reach agreement by December 15, 1990, the Special Master shall make findings and recommendations to the Court, and the Court shall decide the amount of fees to be awarded. If the parties have not reached agreement by December 15, 1990, the City shall pay on that date $150,000 as an interim payment of attorney's fees to counsel for the Byrne Class and Local 36, which will be set off against the total fees to be awarded. Costs do not include the Special Master's fees, which have been dealt with in separate orders of the Court.

18. The Court finds that counsel for the Hammon Class and the Byrne Class have adequately represented their respective classes in this complex and protracted case, and have adequately considered the various and competing interests in arriving at a settlement that is fair to both classes and that has produced

substantial promotional opportunities for members of both classes as well as other firefighters.

## VI. DURATION AND FINALITY

19. The parties explicitly incorporate by reference all matters referred to in the preliminary statement in this Decree.

DATED:

_____ *George Cohen* *Dr. Herbert Reid*
Joan Burt George Cohen Dr. Herbert Reid
Hammon Class Byrne Class D.C. Corporation
 and Local 36 The Defendants

---

APPENDIX III

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Marvin K. Hammon, et al.,

Plaintiffs

v.

Marion S. Barry, et al.,

Defendants

C.A. 84–0903

(Consolidated Cases)

Hon. Charles R. Richey
PERSONAL NOTICE TO
HAMMON CLASS

THE LITIGATION: If you are or were a member of the District of Columbia Fire Department or if you were an unsuccessful applicant for employment with the Fire Department, *and* you claim to be a victim of racial discrimination because you are a black man or woman, you are a member of the "Hammon Class." A lawsuit filed in this Court seeks relief on behalf of a class of persons in which you are included. The parties have reached a settlement of this lawsuit, and you will be bound by that settlement if it is approved by the Court.

THE SETTLEMENT: The representatives of the Hammon class have reached a settlement with the District of Columbia regarding all claims of past discrimination involving members of the class. That agreement provides for monetary compensation to some class members, promotions for some class members, and development of future nondiscriminatory promotion tests. The agreement will be embodied in a formal decree which will be approved by the Court. All members of the class will be bound by the decree. The decree will resolve all claims of past discrimination against black employees and/or applicants for employment with the Fire Department —*i.e.*, claims of discrimination in hiring, promotion, working conditions, etc., and all claims of racial discrimination against black firefighters or applicants based upon any event which occurred prior to the date of the decree. The settlement resolves all claims of discrimination actually made or which might have been made. If the settlement is approved by the Court, no member of the Class may hereafter sue the City, any department or representative thereof, or any party to the settlement agreement with respect to these matters.

The agreement signed by the parties is attached to this notice. Although a final decree has not yet been approved, it will embody the terms of the signed agreement, as well as set forth procedures for implementing the agreement.

OBJECTIONS: Any member of the class may object to the terms of the agreement. To do so, a class member must object in writing, setting forth specifically the

grounds for objection, and referring to the case number 84-0903. That writing must be received by James F. Davey, Clerk of the United States District Court for the District of Columbia, 3rd & Constitution Aves., N.W., Washington, D.C. 20001 no later than October 9, 1990. Any person who wishes to be heard, personally or through counsel, may appear at a fairness hearing to be held at 2:00 p.m., October 23, 1990, in Courtroom 10 of the United States District Court, provided that such person has filed a timely written objection.

MAKING A CLAIM: A claims form will be made available to all current members of the Fire Department who are members of the Hammon Class after it is approved by the Court. Any other person may request a claims form by writing to James F. Davey, Clerk of the United States District Court for the District of Columbia, 3rd & Constitution Aves., N.W., Washington, D.C. 20001 no later than October 29, 1990, providing his/her name, address, home telephone and social security number, and referring to case number 84-0903. Claims forms will be provided as soon as possible after they are approved by the Court.

LEGAL ASSISTANCE: Any person who believes that he or she is or may be a member of the class and who has questions concerning the settlement or how to make a claim, may contact the lawyers for the Hammon Class at (202) 479-2697. Ask for Ms. Burt.

ADDITIONAL COPIES: Additional copies of this notice, with the attachments— *i.e.,* the signed agreement and the promotion schedules—will be available in Room S102 (Public Affairs Office) of the D.C. Fire Department, at 1923 Vermont Ave., N.W., Washington, D.C. between the hours of 8:30 and 4:30 from now until October 29, 1990.

James F. Davey

Clerk of the U.S. District Court

*Important Notice Regarding Settlement of Firefighters Case*

UNITED STATES DISTRICT COURT DISTRICT OF COLUMBIA

Marvin K. Hammon, et al., Plaintiffs

v.

Marion S. Barry, et al., Defendants

C.A. 84-0903

(Consolidated Cases)

Hon. Charles R. Richey

NOTICE BY PUBLICATION TO HAMMON CLASS

THE LITIGATION: If you are or were a member of the District of Columbia Fire Department or if you were an unsuccessful applicant for employment with the Fire Department, *and* you claim to be a victim of racial discrimination because you are a black man or woman, you are a member of the "Hammon Class." A lawsuit filed in this Court seeks relief on behalf of a class of persons in which you are included. The parties have reached a settlement of this lawsuit, and you will be bound by that settlement if it is approved by the Court.

THE SETTLEMENT: The representatives of the Hammon class have reached a settlement with the District of Columbia regarding all claims of past discrimination involving members of the class. That agreement provides for monetary compensation to some class members, promotions for some class members, and development of future nondiscriminatory promotion tests. The agreement will be embodied in a formal decree which will be approved by the Court. All members of the class will be bound by the decree. The decree will resolve all claims of past discrimination against black employees and/or applicants for employment with the Fire Department —*i.e.,* claims of discrimination in hiring, promotion, working conditions, etc., and all claims of racial discrimination against black firefighters or applicants based upon any event which occurred prior to the date of the decree. The settlement resolves all

claims of discrimination actually made or which might have been made. If the settlement is approved by the Court, no member of the Class may hereafter sue the City, any department or representative thereof, or any party to the settlement agreement with respect to these matters.

COPIES OF AGREEMENT: Copies of the signed agreement will be available in Room S102 (Public Affairs Office) of the D.C. Fire Department, at 1923 Vermont Ave., N.W., Washington, D.C. between the hours of 8:30 and 4:30 from now until October 29, 1990. You may pick up copies or have copies picked up for you. Although a final decree has not yet been approved, it will embody the terms of the signed agreement, as well as set forth procedures for implementing the agreement.

OBJECTIONS: Any member of the class may object to the terms of the agreement. To do so, a class member must object in writing, setting forth specifically the grounds for objection and referring to the case number 84–0903. That writing must be received by James F. Davey, Clerk of the United States District Court for the District of Columbia, 3rd & Constitution Aves., N.W., Washington, D.C. 20001 no later than October 9, 1990. Any person who wishes to be heard, personally or through counsel, may appear at a fairness hearing to be held at 2:00 p.m., October 23, 1990, in Courtroom 10 of the United States District Court, provided that such person has filed a timely written objection.

MAKING A CLAIM: A claims form will be made available to all current members of the Fire Department who are members of the Hammon Class after it is approved by the Court. Any other person may request a claims form by writing to James F. Davey, Clerk of the United States District Court for the District of Columbia, 3rd & Constitution Aves., N.W., Washington, D.C. 20001 no later than October 29, 1990, providing his/her name, address, home telephone and social security number, and referring to case number 84–0903. Claims forms will be provided as soon as possible after they are approved by the Court.

LEGAL ASSISTANCE: Any person who believes that he or she is or may be a member of the class and who has questions concerning the settlement or how to make a claim, may contact the lawyers for the Hammon Class at (202) 479–2697. Ask for Ms. Burt.

James F. Davey

Clerk of the U.S. District Court

United States District Court
District of Columbia

Kevin M. Byrne, et al., Plaintiffs

v.

Theodore R. Coleman, et al., Defendants

C.A. 85–0782

Hon. Charles R. Richey
PERSONAL NOTICE TO
BYRNE CLASS

THE LITIGATION: Kevin M. Byrne and others filed a class action on behalf of all white members of the District of Columbia Fire Department eligible for promotion to challenge a proposed affirmative action plan and the use of race as a criterion in making promotions. Representatives of the class have agreed to a settlement of their suit.

THE SETTLEMENT: A signed agreement of the parties is attached to this notice. That agreement sets forth all essential terms of the settlement. These terms will be embodied in a decree which will be submitted for the Court's approval. Briefly stated, the settlement provides (1) that designated individuals will be promoted to vacancies in the ranks of Sergeant, Lieu-

tenant and Captain that arose prior to March 1, 1989, without any racial preferences, (2) that a fourth platoon will be established, resulting in additional promotional opportunities, and (3) that new promotional tests will be administered on two occasions in the coming months, with the resulting promotional registers to be announced by February 1, 1991 and August 1, 1991. All members of the class will be bound by the decree. The decree will resolve all claims brought by the class involving promotions that have taken place and all claims involving promotions which are required by the agreement. The settlement resolves all claims of discrimination actually made or which might have been made. If the settlement is approved by the Court, no member of the Class may hereafter sue the City, any department or representative thereof, or any party to the settlement agreement with respect to these matters.

OBJECTIONS: Any member of the class may object to the terms of the agreement. To do so, a class member must object in writing, setting forth specifically the grounds for objection and referring to the case number 85-0782. That writing must be received by James F. Davey, Clerk of the United States District Court for the District of Columbia, 3rd & Constitution Aves., N.W., Washington, D.C. 20001 no later than October 9, 1990. Any person who wishes to be heard, personally or through counsel, may appear at a fairness hearing to be held at 2:00 p.m., October 23, 1990, in Courtroom 10 of the United States District Court, provided that such person has filed a timely written objection.

LEGAL ASSISTANCE: Any person who believes that he or she is or may be a member of the class and who has questions concerning the settlement may contact the lawyers for the Byrne Class at (202) 833-9340. Ask for Mr. Cohen or Mr. Collins.

James F. Davey

Clerk of the U.S. District Court

APPENDIX IV

This Form Must be Received on or Before Nov. 30, 1990

United States District Court
District of Columbia

Marvin K. Hammon, et al., Plaintiffs

v.

Marion S. Barry, et al., Defendants

C.A. 84-0903

(Consolidated Cases)

Hon. Charles R. Richey

Nov. 6, 1990

HAMMON CLASS CLAIMS FORM

_____
Please Print Name

I declare under penalty of perjury that the statements made below are true, to the best of my knowledge and belief:

1. I am a black employee, past or present, in the uniform ranks of the D.C. Fire Department, or a past unsuccessful applicant for employment in such position. I am or was employed by the District of Columbia Fire Department, or I unsuccessfully applied for employment with the Fire Department. I claim that I have been the victim of racial discrimination in hiring or employment by the Department.

2. I qualify for compensation under the settlement for the following reason(s).

(a) During the following years, I was employed by the Fire Department, and I was a member of the Department on 1/1/80:

1962 ___ 1963 ___ 1964 ___ 1965 ___ 1966 ___ 1967 ___
1968 ___ 1969 ___ 1970 ___ 1971 ___ 1972 ___ 1973 ___
1974 ___ 1975 ___ 1976 ___ 1977 ___ 1978 ___ 1979 ___

OR

(b) I took the 1980 hiring examination to qualify for employment as a D.C. firefighter, and I became a firefighter on _____ (fill in date)

OR

(c) I took the 1980 hiring examination to qualify for employment as a D.C. firefighter. I was never hired but I received notice that a firefighter's position was available on _____ (fill in date or "never")

(3) I qualify for compensation for special services on behalf of the class rendered on my own time. I spent _____ (fill in number) hours and provided the following services: (describe briefly) _____

_____

_____

(4) I am unsure about whether I qualify for compensation. I state the following facts for consideration when compensation is awarded (state any facts that explain why you think you might be eligible for compensation, and indicate any information which you need but do not have at the time you are filling out this form):

_____

_____

_____

_____

_____

_____

DATED: _____

Signature

ADDRESS _____

_____

HOME TELEPHONE ( )_____

SOCIAL SECURITY NO. _____

MAIL THIS FORM TO:

James F. Davey,

Clerk of the United States District Court for the District of Columbia

3rd & Constitution Aves., N.W.,

Washington, D.C. 20001

IT MUST BE RECEIVED ON OR BEFORE NOVEMBER 30, 1990